UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 13-30025 |
| | ) | |
| **HERBERTO PULGAR,** | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

SUE E. MYERSCOUGH, U.S. District Judge:

Before the Court is Defendant Herberto Pulgar's Renewed Motion for Judgment of Acquittal and Motion for New Trial (d/e 109). That motion is DENIED. Sufficient evidence was presented at trial to find that Pulgar was in a conspiracy to distribute cocaine, this Court properly denied Pulgar's motion to suppress, and this Court properly instructed the jury regarding aiding and abetting.

### I. BACKGROUND

On April 10, 2013, Pulgar was indicted for conspiracy to distribute 5 kilograms or more of mixtures containing a detectable

amount of cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A) and for distributing 500 grams or more of mixtures containing a detectable amount of cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B). Before his trial, Pulgar filed a motion to suppress statements he made to law enforcement officers after remarking that he would like to call his attorney. See Motion to Suppress Statements, d/e 55.[1] At a pretrial conference on November 8, 2013, the Court orally denied the motion. The Court later issued a written opinion further explaining that Pulgar had not unambiguously invoked his right to counsel, so the statements that he made after asking to call his attorney did not need to be suppressed. See Opinion of December 5, 2013, d/e 102.

During a later pretrial conference, Pulgar objected to the Government's proposed jury instruction regarding aiding and abetting. Pulgar later renewed this objection during the jury instruction conference. The Court ultimately overruled Pulgar's objections, and the instruction was given to the jury. See Jury Instructions, d/e 98 at 28.

---

[1] For the details of this objection and the Court's denial of the motion to suppress, see Opinion of December 5, 2013 (d/e 102).

Pulgar was tried from November 19 to November 22, 2013. The Government's primary witness was Pulgar's alleged co-conspirator, Klinton Schmidt. Schmidt testified that he had purchased cocaine from Pulgar since 2002. Official Transcript of Proceedings as to Herberto Pulgar ("Transcript"), d/e 111 at 7. Schmidt then divided the cocaine into smaller amounts, "cut" it with other substances to increase the weight, and sold it. Id. at 10-11. Schmidt worked his way up from initially purchasing four and a half ounces of cocaine from Pulgar every one to two months, id. at 12, to purchasing nine ounces at a time, id. at 13, then around 2005, to purchasing half of a kilogram. Id. at 14-16. In approximately 2009 or 2010, Schmidt began purchasing three-quarters of a kilogram of cocaine every one or two months for around $27,700 each time. Id. at 20-21. This arrangement continued until Schmidt and Pulgar were arrested in 2013. Id. at 107-08

While Schmidt was largely independent in deciding how to sell cocaine to his customers, id. at 168-72, he did have a close relationship with Pulgar, who would monitor his sales to see if he

needed more cocaine to sell to his customers. Id. at 68-69. On some occasions, Pulgar "fronted" cocaine to Schmidt, and Schmidt paid him for it at a later time. Id. at 19, 162-63. Furthermore, Pulgar had a standing "return policy" with Schmidt, whereby Schmidt could return unsold cocaine to Pulgar if Schmidt's customers told Schmidt that it was poor quality and Schmidt was not able to sell it all. Id. at 47-48, 169-70. Pulgar and Schmidt also developed a code for talking about their transactions. Id. at 26-28, 42-43. Outside of their cocaine-dealing relationship, Schmidt testified that he was friends with Pulgar, and that he "spen[t] time with [Pulgar] other than dealing cocaine." Id. at 22. Pulgar and Schmidt also went on vacations together, and Pulgar was familiar with Schmidt's family. Id. at 22-23.

At the conclusion of the trial, the jury returned a verdict of guilty on count one of the indictment against Pulgar and found that he had engaged in a conspiracy to distribute 500 grams or more of cocaine. See Jury Verdict, d/e 99. The jury also found Pulgar not guilty of the offense of distribution of cocaine. Id.

On January 5, 2014, Pulgar filed a motion for judgment of

acquittal and for new trial.  See Defendant Pulgar's Renewed Motion for Judgment of Acquittal and Motion for New Trial ("Motion"), d/e 109.  As January 5 was outside of the 14 days provided by Federal Rule of Criminal Procedure 33 for filing a motion for new trial, Pulgar also filed a motion for extension of time.  See Defendant Pulgar's Motion for Leave to Extend Time in Which to File His Motion for New Trial, d/e 110.  In the motion for extension of time, Pulgar's counsel stated that she had been unable to file the motion for new trial earlier due to a number of health issues that had arisen for her and her mother.  Id.  The Court found that this constituted "excusable neglect" under Federal Rule of Criminal Procedure 45 and allowed for the late filing.  See Text Order of January 8, 2014.  The Court also gave Pulgar 30 days to file a memorandum in support of his motion.  Id.

When no memorandum had been filed by April 30, 2014, the Court directed Pulgar to file a memorandum by May 14, 2014, or rest on the arguments made in the motion itself.  See Text Order of April 30, 2014.  Pulgar did file a memorandum in support of his motion on May 14, 2014.  See Defendant Pulgar's Memorandum of

Law in Support of His Renewed Motion for Judgment of Acquittal and Motion for New Trial ("Memorandum"), d/e 122.  On June 5, 2014, the Government filed a response to Pulgar's motion.  See Government's Response to Defendant's Motion for New Trial ("Response"), d/e 125.

## II. **LEGAL STANDARD**

Under Federal Rule of Criminal Procedure 29, "the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction."  FED. R. CRIM. P. 29(a).  To determine whether the evidence presented at trial was sufficient, the Court evaluates whether any rational trier of fact could have found that the Government proved the essential elements of the crimes beyond a reasonable doubt.  United States v. Torres-Chavez, 744 F.3d 988, 993 (7th Cir. 2014) (stating that a movant under Rule 29 "faces a nearly insurmountable hurdle").  In making that determination, the Court views the evidence in the light most favorable to the Government.  Id.

Failing a judgment of acquittal, a defendant can move for a

new trial under Federal Rule of Criminal Procedure 33, and the Court may grant a new trial "if the interest of justice so requires." FED. R. CRIM. P. 33(a). When a defendant seeks a new trial because of an alleged trial error, the Court will grant a new trial if there is a "reasonable possibility that the error had a prejudicial effect upon the jury's verdict," see United States v. Van Eyl, 468 F.3d 428, 436 (7th Cir. 2006), or if the error "jeopardized the defendant's substantial rights." United States v. Reed, 986 F.2d 191, 192 (7th Cir. 1993). The Court is to grant these motions "sparingly," or "only in those really exceptional cases." Reed, 986 F.2d at 192.

### III. ANALYSIS

Pulgar moves for acquittal or for a new trial on three grounds: (1) his conviction for conspiracy could not be supported by the law or by the testimony of Schmidt, who Pulgar argues was not a credible witness; (2) his motion to suppress statements that he made after asking to speak with his counsel was improperly denied; and (3) the jury should not have been given an aiding and abetting instruction. Motion, d/e 109 at 1-2. In its response, the Government addresses Pulgar's arguments and also argues that

Pulgar's motion should be denied as untimely.

### A. Pulgar's Motion Was not Untimely.

The Government contends that the Court did not have the discretion to extend the time period for Pulgar to file a motion for new trial under Federal Rule of Criminal Procedure 33. The Government quotes a number of Seventh Circuit cases for the proposition that once the 14-day filing deadline under Rule 33 has passed, the Court does not have the discretion to grant additional time to file a motion for new trial. See Response, d/e 125 at 4-5 (citing Eberhart v. United States, 546 U.S. 12, 19 (2005) (referencing "Rule 45(b)'s insistent demand for a definite end to proceedings"); United States v. Holt, 170 F.3d 698, 702-03 (7th Cir. 1999) ("[T]he district court had no discretion to extend the time for filing a motion for a new trial once the 7-day period had expired."); United States v. Muoghalu, No. 07-CR-750, 2010 WL 3184178, at *11 (N.D. Ill. Aug. 9, 2010) (citing Eberhart, 546 U.S. at 19) (the Court "may not grant a motion for new trial that is untimely under Rule 33 if the prosecutor objects")).

However, given Eberhart's reference to "Federal Rule of

Criminal Procedure 45(b)(2)'s admonition that '[t]he court may not extend the time to take any action under Rules 29, 33, 34, and 35, except as stated in those rules,'" Eberhart, 546 U.S. at 15, those cases appear to be based on a previous version of Rule 45. The current version of Federal Rule of Criminal Procedure 45(1)(B) states that the Court may extend the time for a party to file a motion "after the time expires if the party failed to act because of excusable neglect," and the only exception to that rule listed in Rule 45(b)(2) is for Rule 35. See FED. R. CRIM. P. 45. Furthermore, the advisory committee notes accompanying the 2005 amendments to Rule 45 state the following:

> The defendant is still required to file motions under Rules 29, 33, and 34 within the seven-day period specified in those rules. The defendant, however, may consistently with Rule 45, seek an extension of time to file the underlying motion as long as the defendant does so within the seven-day period. But the court itself is not required to act on that motion within any particular time. **Further, under Rule 45(b)(1)(B), if for some reason the defendant fails to file the underlying motion within the specified time, the court may nonetheless consider that untimely motion if the court determines that the failure to file it on time was the result of excusable neglect.**

FED. R. CRIM. P. 45 advisory committee's note. The advisory notes to

Rule 33 contain the same language bolded above. Therefore, because the Court found that excusable neglect existed for the delayed filing of Pulgar's motion for acquittal and for new trial, the Court was permitted under Rule 45 to allow Pulgar to file the motion after the expiration of Rule 33's 14-day time limit.

    **B. The Evidence at Trial Was Sufficient to Support Pulgar's Conspiracy Conviction.**

Pulgar argues that the evidence presented at trial only showed that he was in a buyer-seller relationship with Schmidt, not a conspiracy. See Memorandum, d/e 122 at 5-9. He cites a number of Seventh Circuit cases that held that evidence of a long-term buyer-seller relationship, where the buyer purchases large amounts of drugs and the seller knows that the buyer is in turn selling those drugs, is alone insufficient to establish a conspiracy. See id. (citing United States v. Kincannon, 567 F.3d 893 (7th Cir. 2009); United States v. Colon, 549 F.3d 565 (7th Cir. 2008); United States v. Lechuga, 994 F.2d 346, 347 (7th Cir. 1993)). Instead, the prosecution must establish that the buyer and seller had an agreement to commit some further crime beyond that of exchanging

the drugs that were the subject of their transactions. See Lechuga, 994 F.2d at 349. In other words, there must be some kind of "'stimulation, instigation,' or 'encouragement' by the [seller] of the [buyer's] business." See Colon, 549 F.3d at 568 (quoting Direct Sales Co. v. United States, 319 U.S. 703, 713 (1943)).

This line of cases would avail Pulgar here, but for Schmidt's testimony at trial that he purchased drugs on credit from Pulgar on several occasions and, most importantly, had an arrangement through which he could return unsold cocaine to Pulgar. See Transcript, d/e 111 at 19, 47-48, 162-63, 169-70. Such an arrangement—whereby a buyer can purchase drugs on consignment from a dealer—has been deemed "quintessential" evidence of a conspiracy. See United States v. Claybrooks, 729 F.3d 699, 705 (7th Cir. 2013) (quoting United States v. Johnson, 592 F.3d 749, 755 n.5 (7th Cir. 2010)) ("Consignment sales suggest an agreement between the seller and purchaser to engage in retail drug distribution 'because neither party profits until the middleman distributes the drugs to others.'"). A consignment arrangement "shows that the supplier will not get paid until the middleman

resells the drugs." Johnson, 592 F.3d at 755 n.5. Sales on credit, especially if they are repeated over a long period of time, are also strong evidence of a conspiracy. See United States v. Brown, 726 F.3d 993, 1000-02 (7th Cir. 2013), cert. denied, __ U.S. __, 134 S. Ct. 1876 (U.S. 2014). Lastly, it is also noteworthy that Schmidt testified that he had a close personal relationship with Pulgar, and that they spent time together outside of their buyer-seller relationship. See Transcript, d/e 111 at 22-23. Based on all of this testimony, the jury was reasonable in finding that Pulgar had engaged in a conspiracy to distribute cocaine with Schmidt.

Pulgar next argues that the Court should reject Schmidt's testimony as not credible, which would remove the evidentiary support for Pulgar's conspiracy conviction. See Memorandum, d/e 122 at 3-4. In his motion, Pulgar emphasizes the fact that Schmidt was a habitual marijuana user. Id. at 4-5. He also focuses on Schmidt's history of lying about his drug use, id. at 5, 18, and argues that the jury impliedly rejected much of Schmidt's testimony about the quantities of cocaine that he purchased from Pulgar, since the jury only convicted Pulgar of conspiracy to distribute 500

grams or more of cocaine, rather than 5 kilograms or more. Id. at 18-19.

Evaluating witness credibility "is a matter inherently within the province of the jury, and 'absent extraordinary circumstances,' th[e] court will not reevaluate the testimony of a witness to determine his or her motives or other possible measures of reliability." United States v. Dunigan, 884 F.2d 1010, 1013 (7th Cir. 1989) (quoting United States v. Garner, 837 F.2d 1404, 1423 (7th Cir. 1987)). Here, because the jury found Pulgar not guilty of distribution of cocaine and conspiracy to distribute 5 kilograms or more of cocaine, the jury did implicitly reject some of Schmidt's testimony. However, the jury also found that Schmidt was credible enough to trust at least some of his testimony—specifically, the testimony showing that Pulgar conspired with Schmidt to sell 500 grams or more of cocaine. That was a reasonable conclusion for a jury to reach based on the testimony at trial, so this Court will not disturb that finding.

**C. Pulgar's Motion to Suppress Was Properly Denied.**

The Court has already addressed the substance of Pulgar's

objection to the Government's use of statements he made after remarking that he would like to speak to his lawyer, and found that Pulgar had not unambiguously invoked his right to counsel.  See Opinion of December 5, 2013, d/e 102 at 14-17.  Pulgar's latest motion simply reincorporates the arguments from his motion to suppress, which the Court already found unavailing.  See Memorandum, d/e 122 at 19.  Furthermore, the Government did not actually use any of the statements that Pulgar made after asking for counsel, so this issue is now moot.  See Response, d/e 125 at 7.  Therefore, the Court's denial of Pulgar's motion to suppress cannot form the basis for either a judgment of acquittal or a new trial.

### D. The Aiding and Abetting Jury Instruction Was Not Improper.

Lastly, Pulgar renews his objection to the aiding and abetting instruction that was given to the jury.  He argues that issuing this instruction was improper because "the proof as to the existence of a conspiracy was insufficient," and because Pulgar "was never charged with aiding and abetting Schmidt."  See Memorandum, d/e

122 at 19-20. The Court has already dispensed with the former argument above. As to the latter argument, the Government clarified that the instruction related to the distribution charge against Pulgar, not the conspiracy charge, see Response, d/e 125 at 5-6, and pointed out that "'it is well established that a defendant charged as a principal may be convicted as an aider and abettor—even where an indictment makes no reference to 18 U.S.C. § 2, an aiding and abetting statute.'" Id. at 5 (quoting United States v. Carter, 695 F.3d 690, 697 (7th Cir. 2012), cert. denied, __ U.S __, 133 S. Ct. 913 (U.S. 2013)). The use of the aiding and abetting instruction was, therefore, not improper and does not justify a judgment of acquittal or a new trial.

## IV. **CONCLUSION**

The Court finds that the evidence at trial was sufficient to support Pulgar's conviction for conspiracy to distribute cocaine, and that the interest of justice does not require a new trial. Therefore, Pulgar's Renewed Motion for Judgment of Acquittal and Motion for New Trial (d/e 109) is DENIED. The Clerk is directed to terminate both the motion (d/e 109) and Pulgar's Memorandum of Law in

Support of His Motion for Judgment of Acquittal and Motion for a New Trial (d/e 122).

ENTER: September 26, 2014.

/s Sue E. Myerscough
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE